IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

MARCH 1999 SESSION

FILED

August 24, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 03C01-9802-CR-00065 and # 03C01-9809-CR-00310 |
| Appellee, | * | |
| | | WASHINGTON COUNTY |
| VS. | * | |
| | | Hon. Lynn W. Brown, Judge |
| MOHAMED F. ALI, | * | |
| | | (Rape and Attempted Bribery |
| Appellant. | * | of a Witness) |

For Appellant:

Clifford K. McGown, Jr., Attorney
113 North Court Square
P.O. Box 26
Waverly, TN  37185
(on appeal)

David F. Bautista
District Public Defender
and
Deborah Black Huskins
Assistant Public Defender
142 E. Market Street
P.O. Box 996
Johnson City, TN  37605
(at trial and of counsel on appeal)

For Appellee:

Paul G. Summers
Attorney General and Reporter

Michael E. Moore
Solicitor General

Ellen H. Pollack
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
Nashville, TN  37243

OPINION FILED:_____

AFFIRMED

GARY R. WADE, PRESIDING JUDGE

The defendant, Mohamed F. Ali, was convicted of rape and attempting to bribe a witness. Although represented by counsel at trial, the defendant served as his own counsel during the sentencing hearing. The trial court imposed Range I, consecutive sentences of twelve years for the rape and three years for the attempted bribery. On direct appeal, this court remanded the cause to the trial court to determine whether the defendant had knowingly and intelligently waived his right to counsel at the sentencing hearing. State v. Mohamed F. Ali, No. 03C01-9405-CR-00171 (Tenn. Crim. App., at Knoxville, Sept. 26, 1996). Afterward, the trial court determined that the defendant had, in fact, knowingly and intelligently waived his right to counsel and that a new sentencing hearing was not required. Approximately two months later, the defendant, this time represented by counsel, filed a motion seeking a reduction of sentence. The trial court denied the motion. The defendant appealed each ruling. This court consolidated the appeals.

The issues presented for review are whether the defendant knowingly and intelligently waived his right to counsel and whether the trial court imposed an excessive sentence. We affirm each of the judgments of the trial court.

A factual summary is in order. The defendant is a physician. In 1989, one of his female patients, the victim, went to the defendant to have her cholesterol checked. After taking a blood sample, the defendant put on a rubber glove, pulled up the victim's dress, and placed his hand inside her underwear. The defendant then administered an injection which he explained was for muscle spasms and directed her to the examination table. The victim described her state afterwards as in a "dream world" or "in la la land." The defendant removed the victim's underwear, fondled her privates, and stated that he would have to show the victim how she and

2

her husband should have intercourse. The victim remembered that the defendant unzipped his pants and placed his penis into her vagina and that, when she tried to pull away, he forced her back. She described the incident was "over quickly." When the victim stepped away from the examination table, she noticed what appeared to be a semen stain on the paper covering. She recalled that she was unable to find her underwear. The defendant then directed her to the reception desk to make another appointment. After leaving the office, the victim stopped at a convenience market and called her husband. When her husband arrived at the market, he found that her speech was slurred. The victim informed him that she had been raped by the defendant and could not find her underwear. The matter was then reported to the police.

Officers later found a semen stain on the examination table. Testing indicated that the defendant could have been the source of the semen. Later, the victim's husband met with the defendant privately. A recording of the conversation confirmed that the defendant claimed to have given the victim an injection dosage of a steroid which he contended had caused her to imagine that the rape had occurred. The defendant stated that he had contacted his insurance company and had been authorized to pay $20,000.00 in cash for the wrongful injection. The defendant had also offered to pay for psychiatric counseling for the victim.

Testimony by a representative of the defendant's malpractice insurance carrier contradicted the defendant's claims. A blood and urine analysis of the victim contradicted the defendant's claim that he had administered depo-medrol, a steroid; instead, tests indicated a high level of hydroxyzine, a sedative used as a pre-anesthetic. Expert testimony indicated that the drug could make one physically helpless.

3

In the prior opinion on direct appeal, a majority of the court ruled in pertinent part as follows:

> The record reflects that after the appellant was convicted, his attorney moved to withdraw because the appellant [had] filed a malpractice suit against the attorney. This motion was followed by the appellant's motion to remove the attorney because of certain alleged failures in the representation. The record on appeal contains no indication of judicial resolution of the motions, but the record subsequent to these motions reflects that the appellant acted pro se relative to his sentencing and new trial motion hearings.

> We believe the trial court was obligated to conduct a hearing on the record to determine if the defendant's decision to proceed pro se was knowingly and intelligently made.

> ***

> Because the record before us does not include a transcript of any hearing regarding the appellant's request to proceed pro se, we are unable to determine if the appellant's decision was knowingly and intelligently made. A new sentencing hearing may not be necessary, if such a hearing was conducted. Therefore, we vacate the sentences and remand the case to the trial court for it to determine if a record exists showing the appellant's affirmative waiver of counsel. If the trial court determines that such a record of waiver exists, it shall reinstate the sentences previously imposed. However, if no such record exists, the trial court shall conduct a new sentencing hearing.

State v. Mohamed F. Ali, No. 03C01-9405-CR-00171 (Tenn. Crim. App., at Knoxville, Sep. 26, 1996), app. denied, (Tenn., June 2, 1997) (emphasis added and citations omitted).

I

The accused in a criminal prosecution has the constitutional right to represent himself and to proceed pro se without the assistance of counsel. Tenn. Const., art. I, § 9; U.S. Const., amend. VI; Faretta v. California, 422 U.S. 806 (1975). However, before the defendant is allowed to proceed on his own behalf, the trial

4

court must determine that the defendant's decision is based upon a knowing and intelligent waiver of his right to counsel. State v. Armes, 673 S.W.2d 174, 177 (Tenn. Crim. App. 1984). Rule 44(a) of the Tennessee Rules of Criminal Procedure provides that indigent defendants should execute a written waiver before being allowed to proceed pro se.

In United States v. McDowell, 814 F.2d 245, 251-52 (6th Cir. 1987) (quoting "Guideline for District Judges" from I Bench Book for United States District Judges, 1.02-2 to -5 (3d ed. 1986)), a series of questions was suggested as a means of assuring a knowing and intelligent waiver of the right to counsel. In Smith v. State, 987 S.W.2d 871 (Tenn. Crim. App. 1998), this court adopted those questions as a guideline in order to assure a proper waiver. This record includes a transcript of the hearing on October 26, 1993.

The defendant discharged his trial counsel several weeks after guilty verdicts were returned on the charges of rape and attempting to bribe a witness. The sentencing hearing was scheduled on the date the motion was filed. In his pro se pleadings, the defendant sought both self-representation and the assistance of the public defender. When the trial court suggested a procedure by which a public defender would be appointed, the defendant sought to withdraw the motion for the assistance of the public defender and represent himself. The trial court and the defendant then engaged in a lengthy exchange regarding the request to proceed pro se. The transcript establishes that the defendant graduated from Cairo University School of Medicine in 1978. Afterwards, he completed his residency and a post-graduate program at East Tennessee State University Medical School. He practiced medicine from 1985 through 1989. The defendant expressed his understanding that if he represented himself that he would be treated just as if he knew the law and he

5

asserted that he had read the Tennessee Rules of Evidence and the Constitution of the United States. At the time, he had in his possession the Tennessee Rules of Evidence. The defendant testified that he had been studying constitutional law and had brought a treatise on the subject to the sentencing hearing. When he was asked whether he was aware of the content of the Sixth Amendment to the United States Constitution, the defendant stated that there was a guarantee to the right to the assistance of counsel and the right of self-representation.

The trial court reiterated that the purpose of the inquiry of the defendant prior to the sentencing hearing was to determine whether the choice of self-representation was a knowledgeable and intelligent choice. When the trial court warned that the self-representation would pose a disadvantage, the defendant stated that he understood. When asked if he knew what Abraham Lincoln said about one who represented himself, the defendant answered, "A man who has himself for his attorney has a fool for an attorney...." At that point, when the defendant asked if he could at sometime in the future elect to have counsel, the trial court answered in the affirmative but warned that "that does not mean that [we] go back and retry something...." The trial court stated as follows:

> But you see things just work out a whole lot better if you are going to have a lawyer and hire him or her and have the continuity of representation. It ... makes for confusion with the court. It makes it difficult for counsel. A lawyer coming in after you make ... some serious legal errors in representing yourself. Well, a lawyer [in that situation] is at a severe disadvantage.... So you are better off if you are going to obtain counsel to do so at this point.

(Emphasis added). Afterwards, the defendant responded, "Who knows, maybe during the next week or so I might find someone.... But for today's hearing, I would like your honor to rule on my eligibility to represent myself."

At the conclusion of the inquiry, the trial court found that the defendant was intelligent, capable, and fluent in the language. It determined that the defendant had been previously able to represent himself in filing a civil lawsuit against his prior attorney which indicated a familiarity with the language and legal concepts:

> I am of the opinion that you are probably making a mistake by representing yourself, [but the court] finds that you are competent, informed and knowledgeable and that this is a knowing and intelligent decision on your part. [All right], you represent yourself....

(Emphasis added).

At the hearing on remand from this court, the trial court not only reviewed the October 26, 1993, transcript, but also permitted testimony. Trial counsel for the defendant asserted that prior to his discharge, he was "one hundred percent confident" that he had advised the defendant of the potential penalties for his crimes. The defendant claimed otherwise. He was allowed to testify. The defendant stated that he would not have signed a waiver of his right to counsel because of the permanency of his act. He stated that he was able to draft the civil complaint against his former attorney only because he had used a malpractice suit filed against him as a form. He claimed that his trial counsel never advised him of the range of punishment for his crimes and that he was unaware that he was facing sentencing on the date he sought to represent himself.

In Smith, this court set aside a conviction when the trial court did not make an extensive inquiry and, in particular, failed to warn the defendant of the specific dangers of self-representation, "the area of primary concern." 987 S.W.2d at 877. While the suggested questions identified in McDowell and adopted in Smith were not specifically utilized by the trial judge in making a determination on the issue

7

of waiver of counsel, there was, in our view, substantial compliance. In one way or another, the trial court touched on each of the subjects included in the guideline. Despite the defendant's failure to actually sign a waiver as required by Rule 44, it is apparent that the defendant knowingly and intelligently waived his right to counsel.

Moreover, the record establishes that the trial judge did make reference to the applicable range of punishment and that the defendant confirmed his understanding. On the remand, the trial court declined to accredit the assertions of the defendant that his waiver of counsel was neither knowingly nor intelligently made. The trial judge concluded that the motion for dismissal of defense counsel constituted a written waiver: "[the defendant did file a written] motion for dismissal of defense counsel [wherein he sought] to act as his own defense counsel."

In our view, these facts are similar to those in State v. Goodwin, 909 S.W.2d 35 (Tenn. Crim. App. 1995), in which a panel of this court ruled that the defendant had validly waived his right to counsel after an inquiry which included questions about his age and education and a warning that proceeding pro se was fraught with peril. In Goodwin, the trial court determined that the defendant "clearly understood the hazards of representing himself" and was aware that he would be responsible for understanding the Rules of Evidence and the rules of court.

II

The defendant sought a reduction of his sentence, pursuant to Rule 35, Tenn. R. Crim. P. In the initial appeal, a panel of this court concluded that the trial court should "reinstate the sentences previously imposed" if it found that there had been a valid waiver of the right to counsel. Ali, separate op. at 6. Thus, this court had conditionally affirmed the sentences imposed. On January 22, 1998,

8

following a finding by the trial court that the defendant's waiver of his right to counsel was valid, the trial court reinstated the sentences originally imposed.

In his March 13, 1998, motion to reduce the sentence, the defendant contended that the maximum sentences were excessive and requested that he be permitted to serve his sentences concurrently rather than consecutively. On March 19, 1998, the trial court denied the motion without a further hearing, with the following commentary:

> The defendant in this cause has never, in any court proceeding, taken the slightest responsibility for committing these offenses, nor has he shown any remorse for his actions of raping his patient while he was a physician. Considering this and the totality of the proof in the sentencing hearing in this cause, the court is of the opinion that the motion for reduction of sentence should be denied.

Rule 35 permits a trial court to reduce a sentence in the "interests of justice." Tenn. R. Crim. P. 35 and Advisory Commission Comments. The trial court may but is not required to conduct an evidentiary hearing. Id. In our view, the sentences, as imposed, are entirely appropriate and justice would not be served by a reduction in the sentence. We find no abuse of discretion on the part of the trial court. See State v. Irick, 861 S.W.2d 375 (Tenn. Crim. App. 1993).

Accordingly, the judgment is affirmed.

_____
Gary R. Wade, Presiding Judge

CONCUR:


_____
Norma McGee Ogle, Judge


_____
Cornelia A. Clark, Special Judge